IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IZIAH ASHLEY, | § | |
| | § | No. 320, 2016 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | ID No. 1203020401 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: December 7, 2016
Decided: January 3, 2017

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices.

**O R D E R**

On this 3rd day of January 2017, it appears to the Court that:

1. Appellant, Iziah Ashley, appeals from a Superior Court Order denying his amended motion for postconviction relief. Ashley makes one claim on appeal. Ashley contends that his trial counsel was ineffective for failing to seek the suppression of his videotaped interview during which he confessed to certain unlawful acts.

2. In June 2011, then eleven-year-old S.B.[1] was living with her grandparents in Wilmington, along with her younger sister, her aunt, Briana Maddox, her aunt's

---

[1] The child victim was referred to as the pseudonym "S.B." by the court below.

nineteen year-old boyfriend, Iziah Ashley, and the couple's infant daughter. S.B.'s mother, Renada, was living with her two sons and their father in Claymont during that time. In September 2011, Renada spoke with S.B. regarding her relationship with Ashley after S.B.'s grandmother showed her a sexual note written by S.B. to Ashley. Renada thought the matter was resolved until March 2012, when she found a text message on S.B.'s phone that she had sent to Ashley offering to perform oral sex. S.B. told her mother that Ashley had sexual contact with her several times. Renada reported the conduct to the police.

3. In March 2012, Ashley was interviewed by Detective Cecilia Ashe of the Wilmington Police Department. Ashley willingly came to the police station and was dropped off by his father and mother for the interview. Before the interview commenced, Detective Ashe read Ashley his *Miranda* rights. Ashley informed the Detective that he had been read his *Miranda* rights before and agreed to waive those rights and speak to the Detective.

4. The interview lasted about four hours and forty-one minutes. Ashley ultimately admitted that he touched S.B.'s chest and that he inserted his penis in S.B.'s mouth twice.

5. On May 21, 2012, Ashley was indicted on four counts of Rape Second Degree, one count of Rape Fourth Degree, and four counts of Unlawful Sexual

2

Contact. Later in 2012, Ashley was re-indicted to include the offenses of Continuous Sexual Abuse, Bribing a Witness, Interfering with a Child Witness, and Conspiracy Second Degree. Ashley went to trial on March 5, 2013. At trial, Ashley acknowledged that his statements to the Detective were voluntary and that he admitted to having sexual relations with the victim twice. However, Ashley claimed that his statements to the Detective during the interview were not true, and that the allegations against him were false. The jury found him guilty of two counts of Rape Second Degree, three counts of Unlawful Sexual Conduct, Bribing a Witness, Interfering with a Child Witness, and Conspiracy Second Degree.

6. The Superior Court sentenced Ashley on June 7, 2013 to fifty years suspended after twenty-five years at Level 5 for each of the Rape Second Degree Counts, eight years suspended for two years at Level 3 for each count of Unlawful Sexual Conduct, five years suspended for one year at Level 3 for Bribery of a Witness, five years suspended for one year at Level 3 for Interfering with a Child Witness, and two years suspended for one year at Level 3 for Conspiracy Second Degree. Ashley filed a direct appear and this Court affirmed his convictions on February 11, 2014.[2]

---

[2] *Ashley v. State*, 85 A.3d 81 (Del. 2014).

7. Ashley filed a *pro se* motion for postconviction relief on December 9, 2014. On February 6, 2015, counsel was assigned to represent Ashley, and an amended motion for post conviction relief was filed on November 30, 2015. On April 8, 2016, a Superior Court Commissioner filed her report recommending that Ashley's amended motion for postconviction relief be denied.

8. The Commissioner found that Ashley voluntarily waived his *Miranda* rights prior to being interviewed by Detective Ashe. The Commissioner also found that Ashley did not, at any point during the interview, attempt to end the questioning or request counsel. While Ashley asked the Detective if he could take a nap and she denied his request, the Commissioner found that Ashley never sought to terminate the interview.

9. The Commissioner also concluded that Ashley was not threatened or coerced during the interview. The Commissioner noted that Ashley was not handcuffed at any point during the interview and was permitted to use the restroom each time he asked to do so. In addition, the Commissioner found that Detective Ashe did not raise her voice during the interview. While the Detective would not let Ashley stand at one point, the Commissioner noted that Ashley said that he understood that he could not stand for purposes of the Detective's safety. The Commissioner concluded that "[w]hen viewing the videotaped interview, when

4

viewing the non-verbal cues and body language of the parties, it is clear that Ashley never had any intention to end the interview."[3]

10. Therefore, because Ashley waived his *Miranda* rights and voluntarily made his statement to police, the Commissioner found that his Sixth Amendment rights and Due Process rights under the Fourteenth Amendment were not violated. Thus, she concluded that it was reasonable for trial counsel to determine that there was no legal basis to move to suppress Ashley's statement, and denied Ashley's claim for failing to meet the first prong of the test established in *Strickland v. Washington*.[4]

11. Ashley appealed the Commissioner's Report. On June 15, 2016, the Superior Court adopted the Commissioner's report denying Ashley's motion for postconviction relief. This appeal followed.

12. This Court will review a trial court's denial of postconviction relief for abuse of discretion.[5] "We carefully review the record to determine if competent evidence exists to support the Superior Court's findings, and review questions of law *de novo*."[6] "To prevail on a claim of ineffective assistance of counsel under *Strickland*, [a defendant] must show that there was (1) deficient attorney performance, i.e., Trial Counsel's performance fell below an objective standard of reasonableness,

---

[3] Appellant's Opening Br., Ex. A at 10-11.
[4] 466 U.S. 668, 688 (1984).
[5] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[6] *Stevenson v. State*, 2016 WL 258783, at \*\*2 (Del. Jan. 19, 2016).

and (2) prejudice resulted from that deficient performance."[7] "[A]ny 'review of counsel's representation is subject to a strong presumption that the representation was professionally reasonable.'"[8]

13. The sole issue on appeal is whether the Superior Court properly applied *Strickland* to Ashley's claim of ineffective assistance of counsel. We find that the Superior Court's analysis regarding prong one of *Strickland* was correct. Ashley's trial counsel was not deficient for failing to file a motion to suppress his videotaped confession. For that reason, the judgement of the Superior Court is affirmed without need to consider its ruling on *Strickland's* second prong.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[7] *Id.*
[8] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (quoting *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990)).